FILED

2018 AUG -2 AM 11: 59

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANNE O'MALLEY-GORDON AND
FRANK GORDON,
Individually and as husband and wife,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA and
FREDERICK Jackson, in his individual capacity;

Defendants.
_____/

CASE NO.:

2:18-CV-533-FtM-29CM

## COMPLAINT

Anne O'Malley-Gordon ("Ms. O'Malley-Gordon") and Frank Gordon ("Mr. Gordon"), Plaintiffs, by and through their undersigned attorney, sue the United States Government ("United States" or "the Government"), and Frederick Jackson ("Jackson") in his individual capacity, and state as follows:

### JURISDICTION, VENUE AND CONDITIONS PRECEDENT

1.  Jurisdiction of the Court is proper under 28 U.S.C. §§ 1331, 1343(3), and 1356.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the acts and omissions giving rise to this claim occurred within the judicial district in which this case is filed. Venue is also proper pursuant to 28 U.S.C. § 1391(e), in that a substantial part of the acts or omissions giving rise to this claim occurred within the judicial district in which this case is filed and Plaintiffs are residents of the judicial district.

3. Plaintiffs bring this action pursuant 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution as well as for the state claims, of malicious prosecution and intentional infliction of emotional distress, and denial of due process violations pursuant to 28 U.S.C. § 2674, and the Federal Tort Claims Act, ("FTCA").

4. Compensatory damages are sought pursuant to the Federal Tort Claims Act and the *Bivens* claims. Punitive damages are sought against all Defendants sued in their individual capacity pursuant to the *Bivens* claims.

5. Attorneys' fees and cost are sought pursuant to the Federal Tort Claims Act.

6. This Court has supplemental jurisdiction to consider state causes of action under 28 U.S.C. § 1367, as the ancillary state claims "form part of the same case or controversy" as other counts for which this Court has jurisdiction.

7. All governmental entities were notified of this claim on March 17, 2017, and all administrative and notice requirements under both the FTCA and State Statutes have been satisfied.

## PARTIES

8. **Frank Gordon** is a 78 year old veteran, a natural born citizen of the United States and a resident of Lee County, State of Florida. At all times relevant hereto, he was a citizen of the United States and a resident of Lee County, State of Florida.

9. **Anne O'Malley-Gordon** is a 55 year old veteran, a natural born citizen of the United States and a resident of Lee County, State of Florida. At all times relevant hereto, she was a citizen of the United States and a resident of Lee County, State of Florida.

10.     **The United States of America** is a governmental entity with jurisdiction and control over the Veterans Affairs Administration ("VA"), an agency of the United States Government and its employees.

11.     The VA is the federal agency directly responsible for the individual and collective constitutional violations and state law torts against Plaintiffs. The VA failed to properly train Jackson and its police officers on First Amendment free speech rights to video and audio record all state officials, including law enforcement officers, in the public performance of their duties. The VA through its negligent policy-making and supervision allowed, enabled, and/or encouraged Jackson and its police officers to violate Plaintiffs' Fourth Amendment rights against illegal search and seizure, and commit all these illegal acts without affording Plaintiffs procedural due process of law as required under the Sixth Amendment of the United States Constitution as applied to the States under the Fourteenth Amendment. The VA's negligent and reckless policy-making allowed, enabled, and/or encouraged Jackson and the police officers' individual and collective state torts against Plaintiffs, and Defendants did so individually and collectively with reckless, wanton and willful disregard of Plaintiffs human rights, safety, and property.

12.     The United States Department of Veterans Affairs Police Department is the uniformed police service of the United States Department of Veterans Affairs responsible for the protection of the VA hospitals and other facilities operated by United States Department of Veterans Affairs and the Veterans Health Administration.

13.     Defendant **Frederick Jackson** is now and has been at all material times the director of the Veterans Affairs Police Department. Jackson is ultimately responsible for the supervision, direction, control, and training of all the Veterans Affairs Police officers. Jackson has overall responsibility for the policies and practices of all Veterans Affairs Police officers, yet

Jackson himself also must obey Veterans Affairs Police policies. Jackson failed to ensure Veterans Affairs Police officers know and follow constitutional and state law. Jackson at all times relevant hereto was acting and continues to act under color of state law.

14. Pursuant to 38 U.S.C. § 901, the VA Police Department is a law enforcement agency with full authority to enforce laws, rules and regulations and make arrests on VA property. VA Police operate throughout the United States under the direction of individual facility directors.

## FACTUAL ALLEGATIONS

15. The United Stated of America employs all individual Defendants.

16. On June 7, 2016 Ms. O'Malley-Gordon went to the Lee County Veteran's Administration Health Center in Cape Coral, Florida due to an ear infection she had had for four weeks. She was given a prescription by her primary care physician.

17. On her way to the on-site pharmacy, Ms. O'Malley-Gordon saw a large group of people standing behind one of the desks at urgent care and talking and laughing very loudly and not doing any work. She became aggravated at this sight and took a photograph of the workers using her phone.

18. Ms. O'Malley-Gordon sent to photograph to her husband, Frank Gordon, stating something along the lines of "typical VA workers not working hard" and he texted her back.

19. As Ms. O'Malley-Gordon was leaving the area, three large, young male Veterans' Administration police officers surrounded her.

20. As Ms. O'Malley-Gordon walked by them, one of the officers, Officer Reynolds, who is approximately 5'10" 270 lbs, approached her stating, "talk to me as I am talking to you." Ms. O'Malley-Gordon asked, "what?" because she did not hear him due to her ear infection.

Officer Reynolds replied, "do you have ID?" Ms. O'Malley-Gordon reached into her pocket and gave him her VA ID, to which Officer Reynolds stated, "not this, I want a legal ID."

21. After further clarification of what exactly he was asking of her, Officer Reynolds asked Ms. O'Malley-Gordon if she had taken a picture, and she admitted that she had.

22. Officer Reynolds told Ms. O'Malley-Gordon that she had broken "the law" and that she had to go to the station where he would write a citation for her.

23. Officer Reynolds told Ms. O'Malley-Gordon that she would have to pay a $50.00 fine and court costs of $25.00.

24. Ms. O'Malley-Gordon asked what law she had violated and Officer Reynolds replied, "You can't take pictures in here" and further stated that there were "signs all over the place" stating this.

25. Ms. O'Malley-Gordon asked where these signs were, as she had not seen them, and Officer Reynolds could not find the signs to show to Ms. O'Malley-Gordon until a second officer, Officer Da Costa, told him there was one sign outside the front entrance door.

26. At that point Officer Reynolds became even more combative, telling Ms. O'Malley-Gordon, "Give me that phone. I need to confiscate it. You are going to delete that photo now or I will."

27. Ms. O'Malley-Gordon told Officer Reynolds she would delete the photo.

28. Officer Reynolds asked Ms. O'Malley-Gordon if she had sent it to anyone and she told him she sent it to her husband.

29. Officer Reynolds continued to hold Ms. O'Malley-Gordon's Florida Driver's License. This, combined with the fact that all three officers continued to surround her, made Ms. O'Malley-Gordon feel as if she was not free to leave.

30. In the meantime, Officer Da Costa was making statements about charging Ms. O'Malley-Gordon with various crimes such as disorderly conduct and stating she would have to pay hundreds of dollars in fines for each charge and stated that she'd be charged a separate fine for each person in the photograph.

31. Fearing she was going to be arrested and/or fined several hundred or more dollars, Ms. O'Malley-Gordon asked what she needed to do to not be charged.

32. Officer Reynolds stated Ms. O'Malley-Gordon needed to have her husband come to the scene and prove that he deleted the photograph from his phone, since she had texted it to him.

33. Ms. O'Malley-Gordon complied and called her husband.

34. After calling her husband, Ms. O'Malley-Gordon asked for her driver's license back. Officer Reynolds refused, stating he had called for a background check on her.

35. These events were all happening in the VA lobby, right at the entrance, in full view of the many people who were walking in and out of the building.

36. By this time, Ms. O'Malley-Gordon was not feeling well and informed all three officers that she had to sit down. She walked to a chair and sat down, and all three officers followed her and hovered over her.

37. Officer Reynolds stood over Ms. O'Malley-Gordon and continued to threaten her by stating the additional fines with which he would charge her, with Officer Da Costa joining in.

38. The third officer present, Officer Bruno, did not say anything to Ms. O'Malley-Gordon, but did hover over her.

39. Ms. O'Malley-Gordon showed Officer Reynolds that not only had she deleted the photograph in question, but that she had deleted every text in her phone due to his actions.

40. Ms. O'Malley-Gordon stated she had done what was asked of her and that she felt his continued actions and attitude toward her constituted harassment.

41. At this point, Officer Reynolds became enraged and stated he was going to give Ms. O'Malley-Gordon a citation.

42. As he looked for the citation book (apparently there was no need to go to the station for a citation to be written, as he had previously stated), Officer Reynolds began to angrily pace back and forth from Ms. O'Malley-Gordon to the front desk, talking loudly for the entire floor to witness and hear.

43. Ms. O'Malley-Gordon begged Officer Reynolds not to cite her as she was unemployed and could not pay a $50.00 fine. Officer Reynolds laughed and said, "plus court costs."

44. Eventually, Officer Reynolds began to write the citation, with help from the other two officers.

45. When Officer Reynolds gave Ms. O'Malley-Gordon the citation, he told her it was now for $80.00, "for court costs." Ms. O'Malley-Gordon asked, "can't I just mail in a check?" to which Officer Reynolds responded, "no, you will have to go to court and sit in front of the judge."

46. Officer Reynolds finally returned Ms. O'Malley-Gordon's ID to her and she went outside to sit on a bench and wait for her husband, who she had been ordered to have appear at the VA by Officer Reynolds.

47. When Mr. Gordon arrived at the VA, Ms. O'Malley-Gordon was sitting in front of the building in tears.

48. Mr. Gordon and Ms. O'Malley-Gordon went inside the building, and my husband

walked to the front desk, where Officer Bruno was located and signed in.

49. As Mr. Gordon turned around, Officer Reynolds quickly approached him and got into his face.

50. Mr. Gordon asked Officer Reynolds why he had written Ms. O'Malley-Gordon a citation when he had told her he wouldn't do so if Mr. Gordon came to the clinic.

51. In response, Officer Reynolds demanded that Mr. Gordon turn over his phone. Mr. Gordon asked, "if I do are you going to void the summons, that you said you would not write, if I came to the clinic and deleted the picture?" Officer Reynolds replied, "give me that phone or I will take it." Mr. Gordon said "What, isn't this the United States of America?"

52. Officer Reynolds continued to demand the phone stating, "if you don't delete that photo now, I am going to arrest you." When Mr. Gordon asked, "for what?" Officer Reynolds kept threatening, bullying, harassing Mr. Gordon and Ms. O'Malley-Gordon, and talking to no one in particular, saying "this guy is going in handcuffs in a second, I am going to arrest this guy he's got another second."

53. While Officer Reynolds kept up this display, Mr. Gordon was trying to delete the picture from his phone and was becoming more and more nervous and feared that he would be arrested.

54. Neither Mr. Gordon nor Ms. O'Malley-Gordon felt they were free to leave during this whole event.

55. Eventually, Mr. Gordon deleted the photograph and Officer Reynolds allowed Plaintiffs to leave but did not cancel the citation.

56. Ms. O'Malley-Gordon was cited for a violation of 38 CFR 1.218(b)(23) "unauthorized photography on premises."

57. Ms. O'Malley-Gordon retained counsel to defend the citation. She pled not guilty and the citation was dismissed by the Department of Justice before trial.

58. The United States of America, under color of state law, recklessly and wantonly failed to properly supervise, control, and train VA personnel, including, but not limited to Jackson, Reynolds, and Da Costa, on the public's First Amendment free speech rights to record government officials who are performing their duties in public despite well-settled federal and state law on the issue. The United States of America thereby allowed and implicitly authorized the VA and the individual Defendants under color of state law to personally and maliciously violate Plaintiffs' constitutional rights.

59. Jackson, under color of state law, recklessly and wantonly failed to properly supervise, control, and train the VA police officers under his command, on the public's First Amendment free speech rights to record government officials who are performing their duties in public despite well-settled federal and state law on the issue. Jackson allowed and implicitly authorized his officers under color of state law to personally and maliciously violate Plaintiffs' constitutional rights.

60. Jackson's failure to properly train and control Officers Reynolds and Da Costa and set appropriate policies to safeguard all citizens' constitutional and personal rights set this series of events in motion. Jackson abrogated his duties in reckless, wanton, and willful disregard of Plaintiffs' human, safety, and property rights.

61. Plaintiffs suffered months of emotional distress due to the Defendants' illegal searches and seizures and received treatment for same. Plaintiffs had no choice but to return to the same VA clinic for this, and other treatment, and rationally and objectively feared Defendants would again harass and falsely arrest them.

62. Ms. O'Malley-Gordon will always bear the stigma of this malicious prosecution and must explain it to any potential employers.

63. Ms. O'Malley-Gordon and Mr. Gordon have retained the services of the undersigned counsel for this litigation and have agreed to pay her reasonable fees and costs of litigation.

### COUNT I: § 1983 CLAIM OF SUPPRESSION OF FIRST AMENDMENT PROTECTED FREE SPEECH AGAINST DEFENDANT JACKSON

64. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this complaint.

65. Jackson personally, maliciously, and under color of state law deprived Plaintiffs of their rights under the First Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, by maliciously prosecuting Plaintiffs for Plaintiffs' exercise of the constitutional right of free speech to record government officials performing their duties in public and thereby suppressing it.

66. Jackson failed to properly enact proper policies, supervise, train, and discipline Officers Reynolds and Da Costa as well as other VA Police personnel to prevent violation of Plaintiffs' rights.

67. Jackson failed to act as a reasonably prudent law enforcement policy-making executive would and ensure Defendants obeyed firmly established law.

68. In depriving Plaintiffs of these rights, Defendant committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiffs' human rights, safety, and property.

69. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

### COUNT II: § 1983 CLAIM OF FOURTH AMENDMENT ILLEGAL SEIZURE OF PLAINTIFFS' LIBERTY AGAINST DEFENDANT JACKSON

70. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this complaint.

71. Jackson personally, recklessly, maliciously, and under color of state law deprived Plaintiffs of their liberty rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, by failing to adequately train, supervise or discipline Officers Reynolds and Da Costa, thereby allowing the officers to maliciously and unconstitutionally detain Plaintiffs without a warrant or any probable cause to believe Plaintiffs committed any crime.

72. Jackson failed to properly enact proper policies, supervise, train, and discipline Officers Reynolds and Da Costa as well as other VA Police personnel to prevent violation of Plaintiffs' rights.

73. Jackson failed to act as a reasonably prudent law enforcement policy-making executive would and ensure Defendants obeyed firmly established law.

74. In depriving Plaintiffs of these rights, Defendant committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiffs' human rights, safety, and property.

75. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

### COUNT III: § 1983 CLAIM OF FOURTH AMENDMENT ILLEGAL SEARCH AND SEIZURE OF PLAINTIFFS' PERSONAL PROPERTY AGAINST DEFENDANT JACKSON

76. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this complaint.

77. Jackson personally, recklessly, maliciously, and under color of state law deprived Plaintiffs of their rights against unlawful search and seizure under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, by maliciously and unconstitutionally by allowing Officers Reynolds, Da Costa, and other VA officers to seize and search Plaintiffs' personal property, specifically their cellular phones and the photograph taken by Ms. O'Malley-Gordon and sent to Mr. Gordon.

78. Jackson failed to properly enact proper policies, supervise, train, and discipline Officers Reynolds and Da Costa and other VA Police officers to prevent violation of Plaintiffs' rights.

79. Jackson failed to act as a reasonably prudent law enforcement policy-making executive would and ensure Defendants obeyed firmly established law.

80. In depriving the Plaintiffs of these rights, Defendant committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiffs' human, safety, and property rights.

81. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

### COUNT IV: § 1983 CLAIM OF SIXTH AMENDMENT DENIAL OF PROCEDURAL DUE PROCESS AGAINST DEFENDANT JACKSON

82. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this complaint.

83. Jackson personally, maliciously, and under color of state law deprived Plaintiffs of their rights to due process under the Sixth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, by personally, recklessly, maliciously, and unconstitutionally allowing Officers Reynolds, Da Costa, and other VA Police officers to seize

Plaintiffs and their personal property without any probable cause, warrant, or judicial review.

84. Defendant failed to return Plaintiffs' personal property after the Department of Justice placed Defendants on notice that no probable cause existed for the citation of Ms. O'Malley-Gordon or seizure of Plaintiffs' personal property.

85. Defendant failed to notify Ms. O'Malley-Gordon that her citation was unlawful and no prosecution would occur.

86. Defendant gave Plaintiffs no means of contesting the unconstitutional seizure of Plaintiffs' photographs.

87. Even when Defendant knew these actions were illegal and unconstitutional, Defendant did not return Plaintiffs' photographs even pursuant to a Freedom of Information Request.

88. Jackson failed to properly enact proper policies, supervise, train, and discipline Officers Reynolds and Da Costa as well as other VA Police personnel to prevent violation of Plaintiffs' rights.

89. Jackson failed to act as a reasonably prudent law enforcement policy-making executive would and ensure Defendants obeyed firmly established law.

90. In depriving Plaintiffs of these due process rights, Defendant committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiffs' human rights, safety, and property.

91. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

### COUNT V: STATE TORT OF MALICIOUS PROSECUTION AGAINST DEFENDANT JACKSON (Plaintiff O'Malley-Gordon Only)

92. Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs in

this complaint.

93. Defendant, under color of state law, personally, recklessly, maliciously, and unconstitutionally and without the barest scintilla of probable cause, maliciously prosecuted Ms. O'Malley-Gordon, commencing and continuing a criminal judicial proceeding against her.

94. The U.S. Attorney's Office made a bona fide termination of that judicial proceeding.

95. Upon information and belief, the U.S. Attorney's Office determined Defendants lacked probable cause to cite Ms. O'Malley-Gordon.

96. Defendant acted with malice and under color of law.

97. Ms. O'Malley-Gordon suffered general and special damages conforming to the law.

98. Defendant committed the tort of malicious prosecution under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Ms. O'Malley-Gordon's human rights, safety, and property.

99. Jackson failed to properly enact proper policies, supervise, train, and discipline Officers Reynolds and Da Costa, as well as other VA Police Officers to prevent violation of Plaintiff's rights.

100. Jackson failed to act as a reasonably prudent law enforcement policy-making executive would and ensure Defendants obeyed firmly established law.

101. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983 and 28 U.S.C. §1367.

**COUNT VI: STATE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT JACKSON**

102. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in

this complaint.

103. Defendant committed the tort of intentional infliction of emotional distress under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiffs' human rights, safety, and property.

104. Plaintiffs' emotional distress was and is severe in nature.

105. Plaintiffs suffered severe social and personal embarrassment, pain, suffering, and emotional distress at the time of their detention combined with fear that Defendants would again harass, unlawfully detain, or continue their malicious prosecution of Plaintiffs at any moment as Plaintiffs had no choice but to use the VA for ongoing medical care. Plaintiffs still suffer from these issues.

106. Plaintiffs lived and live in fear Defendants will again falsely detain and maliciously prosecute Plaintiffs in retaliation for Plaintiffs' lawful exercise of constitutional rights.

107. Plaintiffs is unable to avoid the VA and live in fear each time the visit since Defendants are apparently unconstrained by the United States Constitution and state tort laws.

108. Plaintiffs' rational and objective severe emotional distress curtails Plaintiffs' liberty interests in travel, enjoyment of life, and pursuit of happiness.

109. Jackson failed to properly enact proper policies, supervise, train, and discipline Officers Reynolds and Da Costa as well as other VA Police officers to prevent violation of Plaintiffs' rights.

110. Jackson failed to act as a reasonably prudent law enforcement policy-making executive would and ensure Defendants obeyed firmly established law.

111. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983 and 28 U.S.C. §1367.

## COUNT VII: 42 U.S.C. § 1983 *MONELL* CLAIMS AGAINST THE UNITED STATES

112. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in this complaint.

113. The written and unwritten policies and customs of The United States of America encouraged, caused, and/or enabled Jackson, Reynolds, and Da Costa to violate Plaintiff's constitutional and state rights.

114. The United States of America is responsible for Jackson's, Reynolds', and Da Costa's supervision, training, and discipline as well as Jackson's, Jacksons', and Da Costa's actions through its policy-making powers and personnel decisions.

115. There is an obvious need for The United States of America to have trained and train all Defendants on First Amendment rights to record public officials in general and specifically law enforcement officers while those officials are performing their duties in public.

116. This need to train law enforcement officers about First Amendment rights is especially relevant with the advent of today's portable video camera technology and cellular phones that have the ability to give every citizen the ability to record the activities of public officials in public where there is absolutely no reasonable expectation of privacy.

117. The United States of America has and continues to demonstrate reckless, callous, and bad faith indifference to Plaintiffs' constitutional and state rights.

118. Only irrational, imprudent, irresponsible, and unreasonable municipalities and political subdivisions would not train law enforcement officers on First Amendment issues in these days of portable video recorders, digital cameras with video-recording capabilities, iPhones, and other "smart phones" that enable the public to use the Constitution's First Amendment to lawfully record and scrutinize public officials.

119. Today, every citizen with a cellular phone is potentially both a journalist and government watchdog, and the advent of technologies such as Twitter and real-time video uploading Websites make our First Amendment right to scrutinize and report upon the activities of our government more important each day.

120. The United States of America has an affirmative duty to ensure its executive agencies and respective employees know and obey firmly established laws. To that end, proper supervision, training, and discipline are paramount to protecting Plaintiff's and all other citizens' constitutional and state rights.

121. The United States of America failed and continues to fail to properly safeguard citizens' constitutional rights, freedoms, and liberties interests by improperly and/or not properly training, supervising, and disciplining Jackson, as well as all the VA Police officers.

122. The United States of America's callous, reckless, wanton, and malicious actions under color of state law before, during, and after this loss has caused Plaintiffs to suffer and continues to suffer the damages Plaintiffs have described above.

123. The United States of America unlawfully deprived Plaintiffs of Plaintiffs' constitutional and state rights, and did so under color of state law in bad faith, with malicious purpose, and in callous, reckless, wanton, and willful disregard of Plaintiffs' human rights, safety, and property.

124. These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. §1983 and 28 U.S.C. §1367.

### COUNT VII: FTCA CLAIM AGAINST THE UNITED STATES OF AMERICA FOR THE MALICIOUS PROSECUTION OF AND/OR ABUSE OF PROCESS TOWARD MS. O'MALLEY-GORDON
(Non Jury Claim)

125. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in

17

this complaint.

126. Defendant United States', malicious prosecution of and/or abuse of process against Ms. O'Malley-Gordon, by and through its agents and Officers Reynolds and Da Costa, violated the FTCA, 28 U.S.C. § 2674.

127. At all material times, Defendant United States maliciously prosecuted Ms. O'Malley-Gordon, by misstating facts, including statements under oath, which led to the false detention of both Ms. O'Malley-Gordon and Mr. Gordon. The U.S. Attorney reviewed and investigated the charges against Ms. O'Malley-Gordon and did not file formal charges for lack of credibility in the evidence put forth against Ms. O'Malley-Gordon. The result was a termination of the prosecution completely in favor of Ms. O'Malley-Gordon.

128. As a direct and proximate result of Defendant United States' malicious prosecution of and/or abuse of process, Ms. O'Malley-Gordon has suffered and will continue to suffer great mental and emotional pain, which has impaired her mental and physical capacity, all of which will result in permanent disability to Ms. O'Malley-Gordon, all to her general damage, which shall be offset.

129. As a further direct and proximate result of the acts, omissions, and conduct of Defendant United States and its agents, and the injuries caused to Ms. O'Malley-Gordon, she was required to and did incur expenses for services of hospitals, doctors, and other medical care and treatment in an amount not now fully known to her.

## COUNT VII

### FTCA CLAIM AGAINST THE UNITED STATES OF AMERICA FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO BOTH PLAINTIFFS
(Non Jury Claim)

130. Plaintiffs re-allege and incorporate by reference all of the preceding paragraphs in

this complaint.

131. Defendant United States' treatment of Plaintiffs throughout the course of the false arrest and imprisonment, violations of their First and Fourth Amendment rights, and malicious prosecution and/or abuse of process deprived Plaintiffs of their civil rights and violated the FTCA, 28 U.S.C. § 2674.

132. At all material times Defendant United States' treatment of Plaintiffs was conducted in a manner that was excessive to the force necessary to control a person. In particular, Officers Reynolds and Da Costa were dealing with two veterans, one a woman and one a 76 year old man, both under medical treatment for various conditions.

133. Defendant United States acted intentionally and said actions constituted a deliberate or reckless infliction of mental suffering upon Plaintiffs.

134. As a direct and proximate result of the unlawful conduct of Defendant United States, and its agents, Plaintiffs have suffered general damages, including but not limited to shock, embarrassment, physical distress and injury, humiliation, severe emotional distress, stress, and other damages to be proven at the time of trial.

135. Upon information and belief, Defendant United States and its agents committed the acts herein alleged maliciously, fraudulently and oppressively in conscious disregard for Plaintiffs' rights and that the conduct of the United States and its agents was a substantial factor in causing Plaintiffs' emotional distress.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial to resolve all claims brought herein except for the claims against the United States of America under the FTCA, which must be adjudicated by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that, after due proceedings, judgment be entered in favor of Plaintiffs and against all Defendants, jointly and severally, and that this Court:

a. Award Plaintiffs all compensatory damages reasonable under the circumstances, including physical pain and suffering, mental anguish and emotional distress, disfigurement, medical expenses, loss of enjoyment of life, and any other compensatory damages, for each count alleged in the Complaint;

b. Award Plaintiffs punitive damages against all Defendants sued in their individual capacity (Plaintiffs acknowledge that punitive damages are not available against the United States);

c. Award Plaintiffs reasonable attorney's fees and court cost as allowed by law;

d. Award Plaintiffs legal interest on all damages awarded from the date of statutory demand until paid, and

e. Award Plaintiff such other and further relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 18th day of July, 2018.

/s/ *April S. Goodwin*
APRIL S. GOODWIN, ESQ.
FLORIDA BAR NO: 0502537
The Goodwin Firm
801 West Bay Drive, Suite 705
Largo, FL 33770
*Attorney for Plaintiff*
Phone: (727) 316.5333
april@goodwin-firm.com